UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
------------------------------------------------------

JEFFREY KAISER, *et al.*

        Plaintiffs,

vs.

ODB COMPANY

        Defendant.

------------------------------------------------------

CASE NO. 1:10-CV-01499

OPINION & ORDER
[Resolving Doc. Nos. 12]

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

In this products liability case, the Defendant ODB Company ("ODB") moves for summary judgment under Federal Rule of Civil Procedure 56. [Doc. 12.] The Plaintiffs, Jeffrey and Margaret Kaiser, oppose the motion. [Doc. 16.] The Defendant replied. [Doc. 20.] For the following reasons, the Court **DENIES** the Defendant's motion for summary judgment.

**I. Background**

On November 13, 2008, while working for the City of Parma, Plaintiff Jeffrey Kaiser had his right hand severed by the impeller of a leaf collector machine that was manufactured by Defendant ODB. In the current motion for summary judgment, the Defendant argues that there are no issues of material fact regarding whether the risk of injury was open and obvious and whether the Plaintiff assumed the risk of injury by reaching into the leaf collector. [Doc. 12; Doc. 20.]

Plaintiff Jeffrey Kaiser began working for the City of Parma in 1996; one of his job

Case No. 1:10-CV-01499
Gwin, J.

responsibilities was to vacuum leaves from curbs adjoining lawns in the fall using a motor driven leaf collector. [Doc. 16 at 4.] In 2008, the City of Parma purchased a new industrial leaf collector that was manufactured by the Defendant ODB. [Id. at 5.] The design of the ODB leaf collector was similar to the leaf collectors, which were manufactured by other companies, that Kaiser had used previously. [Id. at 5.] The ODB leaf collector is powered by a diesel engine, creating a vacuum that allows leaves to be sucked into a hose , which are then deposited into a leaf collection container. [Doc. 16-1 at 1.] Before the collector can suction leaves, however, it is necessary for the clutch on the impeller, located within the blower housing, to be manually engaged. [Doc. 16 at 5.] Once manually engaged, the impeller rotates at a high speed, creating the suction necessary to vacuum leaves from the ground. [Id.] If the clutch remains in the neutral position, the impeller will not spin. [Id.]

The Plaintiff used the ODB leaf collector for several days without any problems. However, on November 13, 2008, the leaf collector became jammed while Kaiser was using it. [Doc. 12 at 3; Doc. 16 at 6.] The instruction manul of the leaf collector contained no instructions about how to safely unclog the impeller of the machine. [Id. at 5.] Following the clog, Kaiser first attempted to unclog the leaf collector by banging the tube of the collector on the ground. [Id. at 6.] The collector remained jammed and Kaiser disengaged the clutch to prevent the impeller from spinning. [Doc. 12 at 3; Doc. 16 at 6.] He did not, however, completely shut off the engine that was powering the collector. [Doc. 12 at 3; Doc. 16 at 6.] Plaintiff Kaiser then peered into the collector and noticed that a clump of leaves was trapped inside the discharge chute of the impeller. [Doc. 12 at 3; Doc. 16 at 7.] After confirming that the impeller was not spinning, Kaiser first attempted to dislodge the leaves with a rake. [Doc. 12 at 3; Doc. 16 at 7.] After his attempt with the rake failed, Kaiser

Case No. 1:10-CV-01499
Gwin, J.

climbed onto the collector and reached into the impeller to dislodge the leaves by hand. [Doc. 12 at 3; Doc. 16 at 7.] While reaching into the impeller, the impeller became engaged and severed his right hand and part of his lower arm. [Doc. 12 at 3; Doc. 16 at 9.] It is not entirely clear why the impeller of the machine suddenly began to spin, although the record suggests the impeller started because the clutch was inadvertently engaged. [Doc. 12 at 3; Doc. 16 at 10.]

Prior to his injury, Kaiser states that he had used similar industrial leaf collectors at least one hundred times and that he had previously safely used his hands to unclog jams in other leaf collector machines. [Doc. 16 at 4-5.] Kaiser also states that he had seen co-workers use similar methods to unclog jams in other leaf collector machines many times without incident. [*Id.* at 4-5.] Because it was common practice in his workplace to unclog the machines this way, and because he had never seen someone injured while doing so, Kaiser says that he did believe that the practice was dangerous. [*Id.* at 4.]

The Plaintiffs filed this action on June 1, 2010, in the Cuyahoga County Common Pleas Court, bringing claims against Defendant ODB for defective product design under Ohio Revised Code Section 2307.73 and for loss of consortium. [Doc. 1-1.] The Plaintiffs allege that the leaf collector was defectively designed, O.R.C. § 2307.75, that inadequate warnings were given, O.R.C. § 2307.76, and that the product violated express and implied warranties regarding its safety, O.R.C. § 2307.77. [*Id.*] On July 7, 2010, the Defendant removed the action to federal court. [Doc. 1.] The Court has proper jurisdiction over this action because the parties are diverse and because the amount in controversy exceeds $75,000. 28 U.S.C. § 1332; 28 U.S.C. § 1441.

In the current motion for summary judgment, the Defendant argues: (1) that Plaintiff Kaiser assumed the risk of injury, since he was aware that the chute of the leaf collector contained an

-3-

Case No. 1:10-CV-01499
Gwin, J.

impeller that could cut his hand; and (2) that there was no duty to warn the Plaintiff of the hazard of reaching into the impeller because the risk was open and obvious. [Doc. 12.] Under both arguments, the Defendant says that the Plaintiff should be precluded from recovery. [*Id.*] The Plaintiffs oppose the motion, saying that Kaiser did not knowingly assume the risk of injury because he was not aware that the clutch of the machine could be easily engaged through accidental or minimal contact. [Doc. 16.]

## II. Legal Standard

Under Federal Rule of Civil Procedure 56(a), a grant of summary judgment is proper if "the movant shows there is no dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. 56(a). The moving party bears the initial burden to show the absence of a genuine dispute of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). "A fact is material if its resolution will affect the outcome of the lawsuit." *Martingale, LLC v. City of Louisville*, 361 F.3d 297, 301 (6th Cir. 2004). This burden is met simply by showing the court that there is an absence of evidence on a material fact on which the nonmoving party has the ultimate burden of proof at trial. *Celotex,* 477 U.S. at 325. The burden then shifts to the nonmoving party to "come forward with some probative evidence to support its claim." *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994). It is not sufficient for the nonmoving party merely to show that there is some existence of doubt as to the material facts. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

In deciding a motion for summary judgment, the Court "considers the facts in the light most favorable to the nonmoving party and draws all reasonable inferences in favor of the nonmoving party." *Lenscrafters, Inc. v. Robinson*, 403 F.3d 798, 802 (6th Cir. 2005) (citations omitted). The

-4-

Case No. 1:10-CV-01499
Gwin, J.

court's function is not to weigh the evidence but to decide whether there are genuine issues for trial. *Multimedia 2000, Inc. v. Attard*, 374 F.3d 377, 380 (6th Cir. 2004). Ultimately the Court must decide "whether the evidence presents sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Martingale*, 361 F.3d at 301

### III. Analysis

*III.A Assumption of the Risk*

Defendant ODB first argues that the Court should grant summary judgment because Plaintiff Kaiser assumed the risk of injury by reaching into the impeller. [Doc. 12 at 4; Doc. 20 at 3.] The Defendant says that the risk of hand injury was obvious, that the Plaintiff knew about the risk, and voluntarily and unreasonably assumed the risk of such an injury. [Doc. 12 at 4; Doc. 20 at 3.]

The Ohio Products Liability Act (OPLA), Revised Code § 2307.71, *et seq.*, controls products liability claims in Ohio. *See Indiana Ins. Co. v. General Electric*, 326 F. Supp.2d 844, 855 (N.D. Ohio 2004); O.R.C. § 2307.71. A plaintiff in a products liability action must prove: "(1) [t]here was a defect in the product manufactured and sold by the defendant; (2) such defect existed at the time the product left the hands of the defendant; and (3) the defect was the proximate cause of the plaintiff's injuries or loss." *Gumnitsky v. Delta Intern. Machinery Corp.*, 411 F. Supp.2d 756, 762 (N.D. Ohio 2005); *Aldridge v. Reckart Equip. Co.*, 2006 WL 2716696, at *7 (Ohio Ct. App. Sept. 19, 2006) (citation omitted). Under the OPLA, a product may be defective in manufacture or construction, in design or formulation, due to inadequate warning or instruction, or because the product does not conform to the manufacturer's representations. O.R.C. §§ 2307.74-2307.77. In the complaint, the Plaintiffs assert that the leaf collector was defective under several of these

Case No. 1:10-CV-01499
Gwin, J.

theories. [Doc. 1-1.]

Assumption of the risk is an affirmative defense that is a complete bar to recovery for products liability claims. *Carrel v. Allied Products Corp.*, 677 N.E.2d 795, 800 (Ohio 1997); *Curtis v. Hoosier Racing Tire Corp.*, 299 F. Supp.2d 777, 784-85 (N.D. Ohio 2004). Express, or primary, assumption of the risk applies when a defendant owes no duty to protect a plaintiff from certain risks so inherent in an activity that they cannot be eliminated. *See Collier v. Northland Swim Club*, 518 N.E.2d 1226, 1228 (Ohio 1987). Implied, or secondary, assumption of the risk applies where the defendant owes some duty to the plaintiff, but the plaintiff voluntarily consents to an appreciated, known, or obvious risk to his or her safety. *Collier*, 518 N.E.2d at 1228. To prove secondary assumption of the risk in a products liability case – which the Defendant asserts here – a defendant manufacturer or designer must show that the plaintiff knew of the precise product defect and the risks that defect carried. In other words, the defendant must establish that the plaintiff knew of the specific condition, knew that the condition was patently dangerous, and that the plaintiff voluntarily exposed himself to the condition. *Carrel*, 677 N.E.2d at 800; *Curtis*, 299 F. Supp.3d at 784-85. Additionally, the defense of assumption of the risk is not available to bar recovery for workplace injuries "when the employee is required to encounter the risk while performing normal job duties." *Carrel*, 677 N.E.2d at 801; *Creameans v. Willmar Henderson Mf. Co.*, 556 N.E.2d 1203, 1206 (Ohio 1991).

The Court finds that the evidence submitted does not support a ruling as a matter of law that Kaiser assumed the risk of the injury that was suffered. Rather, there are unresolved issues of material fact that make a determination of this issue more appropriate for jury resolution. It is not clear that the Plaintiff could have reasonably understood the risk associated with unclogging the

Case No. 1:10-CV-01499
Gwin, J.

impeller by hand, particularly given that it was normal practice among City of Parma workers to unclog machines in this way and the Plaintiff testifies that no injuries had occurred in the past. [Doc. 16 at 14-15.] The evidence submitted indicates that the clutch on the ODB leaf collector was different from other leaf collectors used by the City of Parma in that it could be engaged with only a bump, whereas the clutch mechanisms on other leaf collectors required much greater exertion of force, similar to the process of shifting gears in a car. [*Id.* at 5, 14-16.] Given that Plaintiff Kaiser had only used the ODB machine a few times prior to his accident, it is not clear that the risk of the clutch accidentally engaging and starting the impeller was necessarily known to Kaiser. [*Id.*] Further, apparently neither the City of Parma, nor the ODB instruction manual, provided any instruction or advice on how to safely unclog a jammed impeller. [Doc. 16 at 12.]

The Court cannot say as a matter of law that Kaiser would have understood or appreciated the risk of the impeller suddenly starting while disengaged on *this* particular machine based upon his experience with similar machines with differently designed clutch mechanisms. *See Aldridge,* 2006 WL 2716696, at *28-29; *Zigler v. Avco Corp.*, 846 N.E.2d 547, 552-53 (Ohio Ct. App. Nov. 18, 2005) (finding assumption of risk was a triable issue of fact under similar factual circumstances); *Westray v. Imperial Pools & Supplies, Inc.*, 728 N.E.2d 431, 434 (Ohio Ct. App. 1999); *Syler v. Signore Corp.*, 601 N.E.2d 225, 229 (Ohio Ct. App. 1992).

Further, and without definitively deciding this issue, it is unclear whether the defense of assumption of risk is even available in this case, given that the Plaintiff was required to unclog the leaf collector as part of his normal job duties and was apparently not given any particular instruction by his employer or the manufacturer on the proper method for doing so. *See Allen v. Independent Concrete Pipe Co.,* 2005 WL 3274679, at *1-3 (N.D. Ohio Dec. 2, 2005) (finding assumption of risk

Case No. 1:10-CV-01499
Gwin, J.

barred recovery where employee unclogged discharge chute of concrete mixer by hand, losing arm, because the employee was given special tools for unclogging the chute and chose not to use them); *Jordan v. Dayton Testing Lab., Inc.*, 2004 WL 1077793, at *8 (Ohio Ct. App. May 14, 2004) (finding assumption of the risk where plaintiff ignored warnings on machine and altered the machine); *VanCoppenolle v. Kamco Industries, Inc.*, 1997 WL 679631, at *3 (Ohio Ct. App. Oct. 31, 1997) (finding that assumption of the risk is a valid defense where the employer disobeyed both an employer's instructions and warning stickers on a machine). The Court, therefore, rejects the Defendant's argument that summary judgment is appropriate because the Plaintiff assumed the risk.

*III.B Failure to Warn*

The Defendant also says that it had no duty to warn the Plaintiff of the dangers of reaching into the impeller because the risk of harm was open and obvious. [Doc. 12 at 5.] Under Ohio law, a product is not defective due to inadequate warning as a result of the failure to warn about an open and obvious risk or a risk that is common knowledge. O.R.C. § 2307.76(B); *Freas v. Prater Constr. Corp., Inc.*, 573 N.E.2d 27, 30 (Ohio 1991).

Here, the Court cannot conclude as a matter of law that the risk of harm that the Plaintiff faced in operating the machine was open and obvious. The Court, therefore, declines to find that there was no duty to warn. "Where only one conclusion can be drawn from the established facts, the issue of whether a risk was open and obvious may be decided by the court as a matter of law[;] [h]owever, where reasonable minds could differ with respect to whether a danger is open and obvious, the obviousness of the risk is an issue for the jury to determine." *Aldridge*, 2006 WL 2716696, at *20-21 (internal citations and quotations omitted). Here, although the general risk of having one's hand caught in the impeller was somewhat obvious, the risk of the specific mechanism

-8-

Case No. 1:10-CV-01499
Gwin, J.

leading to the injury suffered – that is, having the clutch slip into gear after being disengaged – was not as clearly open and obvious. *Patterson v. Central Mills, Inc.*, 112 F. Supp.2d 681, 690 (N.D. Ohio 2000) (denying motion for summary judgment where t-shirt caught fire because the general risk of flammability was known but the extent of the risk was not); *Lykins v. Fun Spot Trampolines*, 874 N.E.2d 811, 820 (Ohio Ct. App. 2007) (holding that the general danger of jumping on trampoline open and obvious but that many of the ways that harm could occur were not necessarily open and obvious); *Cincinnati v. Beretta U.S.A. Corp.*, 768 N.E.2d 1136, 1147 (Ohio 2002) (stating that the danger of being shot by a gun was open and obvious but that many of the features of the gun that could cause it to fire unexpectedly were not necessarily open and obvious). The extent to which the risk was open and obvious is particularly unclear because the clutch mechanism on the ODB machine apparently could be engaged by merely being bumped, which is allegedly a different design than was found in other similar leaf collectors that the Plaintiff had used in the past. [Doc. 16 at 16; Doc. 16-1 at 2-4.] The Court, therefore, also rejects the Defendant's argument that summary judgment is appropriate on the failure to warn theory of recovery.

### IV. Conclusion

Because there are unresolved issues of material fact in this case that would be most appropriately resolved by a jury, the Court **DENIES** the Defendant's motion for summary judgment.

IT IS SO ORDERED.

Dated: July 25, 2011        s/ *James S. Gwin*
       JAMES S. GWIN
       UNITED STATES DISTRICT JUDGE